130 So.2d 21

Millie GRADY, as Exrx.,

v.

Nannie Lou WALLACE et al.

7 Div. 462.

Supreme Court of Alabama.

May 11, 1961.

David Johnston, Attalla, for appellant.

Barnes & Smith, Gadsden, and T. J. Carnes, Albertville, for appellees.

LIVINGSTON, Chief Justice.

The record before us presents a will contest tried in the Circuit Court of Etowah County, Alabama, with the aid of a jury, as provided by Sec. 63, Title 61, Code of Alabama 1940, and which resulted in a verdict and judgment for the contestants.

We must reverse and remand the cause because of erroneous instructions given to the jury by the trial court.

Nancy A. Castleberry, testatrix, died on the 30th day of October 1957, in Attalla, Etowah County, Alabama, the county of her residence at the time of her death. She was survived by three grandchildren and one niece. By the terms of the will, Nancy A. Castleberry gave all of her property to her niece, Millie Grady.

Millie Grady filed her petition for probate of the will in the Probate Court of Etowah County, Alabama, on the 14th day of November, 1957. The grandchildren, Nannie Lou Wallace, Ruth Snead and Marcus A. Royal, filed their contest of the will on the 13th day of September, 1957, in the Probate Court of Etowah County, and at the same time asked for a removal of the cause to the Circuit Court of Etowah County and for a jury trial.

The grounds for contest were (a) improper execution of the will, (b) lack of testamentary capacity of the testatrix (c) undue influence exercised upon testatrix by the beneficiary, Millie Grady.

The cause was removed to the Circuit Court of Etowah County, Alabama, where the issues of lack of testamentary capacity and undue influence on the part of Millie Grady were made up and tried by a jury with the result indicated above.

The facts necessary for a determination of this appeal, in addition to those above stated, are substantially as follows:

Testatrix was 82 years old at the time of her death. On May 30, 1957, she executed her will in her own home in the presence of two friends, who signed the will as witnesses at the request of testatrix. The will was prepared by testatrix's own lawyer at testatrix's personal request, and according to her personal directions. The beneficiary, Millie Grady, was not present when the lawyer who prepared the will was called, or when testatrix discussed the will with the lawyer, or when the will was executed.

For some years prior to her death, testatrix was closely associated with the grandchildren who comforted and cared for her in her declining years, and aided her financially.

Testatrix received a pension of about $40 a month, and until June 1957, she owned and maintained a home for herself. Prior to June, 1957, testatrix was closely associated with her granddaughter, Ruth Snead. During World War II, Ruth Snead lived with testatrix. Testatrix broke her arm in 1956 and stayed in Ruth Snead's home for four months; she had a stroke early in 1957 and stayed in Ruth Snead's home for about six weeks, and on these occasions Ruth Snead took care of her. Testatrix was sick in her own home in early 1957 and her grandchildren paid two housekeepers to take care of her. During the last five months of testatrix's life she lived in the home of Millie Grady. For several years prior to her death, testatrix suffered from high blood pressure, arthritis, poor eyesight, and some senility. Testatrix broke her leg in 1955, broke her arm in 1956, had pneumonia in early 1957, and soon thereafter had a stroke. This stroke left her partially paralyzed on one side of her body. Testatrix suffered a terminal stroke two weeks before her death. Prior to the execution of her will, testatrix expressed her desire to have Millie Grady keep her and expressed an intent to ask Millie Grady to keep her and take care of her. Immediately after testatrix executed her will, she moved into Millie Grady's home.

On the third day of June, 1957, testatrix executed a deed conveying her home to Millie Grady. The deed recited a consideration of $1.00.

There is some testimony pro and con as to testatrix's mental condition at the time she executed the will.

In our opinion, there was ample evidence to go to the jury on the question of testatrix's mental capacity and also on the question as to undue influence, if any,

exercised by Millie Grady on testatrix. It seems that the parties on the appeal argue only the question of undue influence of Millie Grady.

Among others, the following charges were given to the jury at the written request of the contestants:

"4. I charge you, Gentlemen of the Jury, that if you are reasonably satisfied from the evidence in this case that the will in question was produced or brought about by acts or conduct on the part of Millie Grady regardless of the condition of the mind of Mrs. Castleberry then as a matter of law that is sufficient reason for setting aside the will and if you so find then you must set aside the will in this case.

"11. Gentlemen of the Jury, I charge you that if you are reasonably satisfied that a confidential relationship existed between Nancy Castleberry and Millie Grady and further if you are reasonably satisfied that Millie Grady was a dominant spirit in that relationship, then the law will presume undue influence on the part of Millie Grady, and the mere fact that Nancy Castleberry signed the will and at the time of signing stated that she knew that she had signed, this would as a matter of law fall far short of the requirements of law in discharging the burden of proof cast upon Millie Grady to repell the presumption of undue influence. The testimony that she knew what she was signing shows no more than that she was informed of the contents of the paper, but the knowledge of the contents of the paper is insufficient to *repell* the imputation that she was acting under the *dominance* spirit and controlling influence of the donee of the paper.

"14. I charge you, Gentlemen of the Jury, that the law presumes the exercise of undue influence in transactions such as this where confidential relations exist between the parties, and

puts upon Millie Grady, if you are reasonably satisfied from the evidence that she is the dominant party in the relation, the burden of repelling the presumption by competent and satisfactory evidence. But, gentlemen, for a presumption of undue influence to be raised, the evidence must show you, clearly and satisfactorily, first that a confidential relation existed between Nancy Castleberry and Millie Grady and second that Millie Grady was a dominant spirit in the relation. Further, gentlemen, I charge you that the relation of aunt and niece is not as a matter of law a confidential relation; however, other factors could exist to make such a relation a confidential relationship. That is a question for you to decide."

It was said in Stanley v. Kelley, 267 Ala. 379, 102 So.2d 16, 19:

"When a will is contested on the ground of undue influence, the burden is on the contestant, in order to raise a presumption of undue influence, to prove a dominant confidential relationship and undue activity in the execution of the will or for a favored beneficiary. Wilson v. Payton, 251 Ala. 411, 37 So.2d 499; Hyde v. Norris, 250 Ala. 518, 35 So.2d 181. We do not think the appellants have successfully carried that burden.

"The controlling principle on the issue of undue influence is that the contestants must show active interference of the beneficiary in procuring the execution of the will. Lockridge v. Brown, 184 Ala. 106, 63 So. 524. To make out the charge, it must be proved that an influence was exerted on the testator which was tantamount to moral coercion and constrained him to do that which was against his will but which from fear, desire of peace, or some other feeling than affection, he was unable to resist. Cox v. Martin, 250

Ala. 401, 34 So.2d 463; Kahalley v. Kahalley, 248 Ala. 624, 28 So.2d 792. * * *"

It was also said in Hubbard v. Moseley, 261 Ala. 683, 75 So.2d 658, 661, as follows:

"With reference to the burden of proof on the issue of undue influence, the rule in respect to a will (not the same in transactions *inter vivos*), the burden is shifted to the favored beneficiary by evidence of confidential relations when there is proof of undue activity on his part in procuring its execution. When that is proven there is a presumption of undue influence which may be overcome 'by proof that the donor had competent independent advice, or by other evidence sufficient to satisfy the judicial conscience that the transaction resulted from the voluntary and well-understood act of the donor.' Betz v. Lovell, 197 Ala. 239, 72 So. 500, 501; Mindler v. Crocker, 245 Ala. 578, 18 So.2d 278; Cook v. Morton, 241 Ala. 188, 1 So.2d 890; Scarbrough v. Scarbrough, 185 Ala. 468, 64 So. 105; Jones v. Brooks, 184 Ala. 115, 63 So. 978; Bancroft v. Otis, 91 Ala. 279, 8 So. 286. The term 'judicial conscience' means no more than reasonable satisfaction. Coghill v. Kennedy, 119 Ala. 641, 644(17), 24 So. 459."

And in Wilson v. Payton, 251 Ala. 411, 37 So.2d 499, 500, it was said:

"Appellant, proponent below, was a favored beneficiary. The testator was proponent's father and such a relationship is per se confidential. It is presumed prima facie that in transactions between parent and child the parent is the dominant party and that they are free from undue influence, and in such cases the burden is upon contestant to show that time and circumstances have reversed the order of nature, and that the dominance of the parent has been displaced by subservience to the child. Betz et al. v. Lovell et al., 197 Ala.

239, 72 So. 500; Hawthorne v. Jenkins, 182 Ala. 255, 62 So. 505, Ann.Cas. 1915D, 707. It may be assumed for the argument that contestants met this burden and showed that the proponent was the dominant party in such relationship. But there was an entire absence of evidence going to show that there was any activity on the part of proponent beneficiary in procuring the execution of the will, or that such influence had any connection whatever with its execution, and in the absence of such evidence a finding on the issue of undue influence in favor of contestants cannot be sustained. Alexander v. Alexander, 208 Ala. 291, 94 So. 53; Betz v. Lovell, supra; Scarbrough v. Scarbrough, 185 Ala. 468, 64 So. 105."

 As a general rule, dominant confidential relationship and undue activity by a favored beneficiary in execution of a will raises the presumption of undue influence and casts the burden of proof on the proponent. Authorities, supra.

 Charge 4, in essence, charges that if the will was brought about by the acts or conduct of the beneficiary, this would be sufficient for setting aside the will. It directs a verdict for the contestants in the absence of any undue influence or of a confidential relationship. Manifestly, under this charge, any act or conduct by the favored beneficiary, whether proper or undue, which brought about the will would be sufficient to avoid it. This is not the law with respect to the issue of undue influence. Authorities, supra.

Charges 11 and 14, given by the court for contestants, in substance, charge that a confidential relationship alone will raise the presumption of undue influence on the part of a favored beneficiary. These charges completely ignore the element of "activity" on beneficiary's part.

The omission of the element of activity on the part of a favored beneficiary was considered in the leading case of Bancroft

v. Otis, supra, and Chandler v. Jost, 96 Ala. 596, 11 So. 636, and a given charge with this omission was declared to be reversible error.

 The prejudicial effect of these charges was not corrected by the oral charge of the court, if indeed it could be so corrected, which we do not decide. See Schock v. Bear, 250 Ala. 529, 35 So.2d 97 (headnote 11); Lehigh Portland Cement Co. v. Sharit, 234 Ala. 40, 173 So. 386.

For the errors pointed out, the case is reversed and remanded.

Reversed and remanded.

LAWSON, STAKELY and MERRILL, JJ., concur.